WESTERN AUTO SUPPLY COMPANY,
a corporation, Appellant,

v.

CHARLES BASSETT CENTER, INC.,
a corporation, Appellee.

No. 5806.

Court of Civil Appeals of Texas.

El Paso.

March 17, 1967.

Scott, Hulse, Marshall & Feuille, James L. Gallagher, Charles R. Jones, El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, Raymond H. Marshall, El Paso, for appellee.

## OPINION

PRESLAR, Justice.

This suit involves the interpretation of a written lease contract entered into by Western Auto Supply Company, appellant, as Lessee, and appellee Charles Bassett Center, Inc., as Lessor. The lease provides for Lessor to maintain the common areas of a shopping center, complex of stores, and for Lessee to pay its pro rata share of the cost of such maintenance. Lessee refused to pay for that portion of the expense which was for guard service, on the basis that it was not an item of maintenance provided for by the lease contract. Lessor then brought this suit. The amount due was stipulated, both parties moved for summary judgment, and judgment was awarded to Lessor. The court thus construed the contract provision as to maintenance to include guard service. We reach a different conclusion.

The contractual provision in question will be referred to as "paragraph 31," and it provides:

"The Lessor agrees to maintain at all times during the term of this lease and any extension thereof the common areas located in said shopping center, including parking areas, driveways, sidewalks, landscaped areas and all other ornamental or service areas not under exclusive control of any tenant, in good repair, serviceable, clean, neat and sanitary by the maintenance of a reasonably smooth all-weather surface on all paved areas, the removal of snow, ice, dirt and trash from parking areas, driveways and sidewalks, the painting and maintenance of signs, lines, traffic buttons and other similar items to designate the parking stalls, traffic lanes and the directional

flow of traffic, the cutting, pruning and cultivation of grass, trees and shrubbery, the removal and replacement of dead landscape planting, the removal of paper, trash and other litter from all of said common areas and the performance of all other *repair and maintenance* work required to keep said common areas in good condition as described hereinabove. The Lessor agrees to provide adequate lighting for said parking area and to keep said lights burning at all times after dark when the Lessee's store located in said shopping center is open for business and to maintain in good repair said lights and lighting equipment."

Another paragraph provides the Lessee will pay each year its pro rata share of the Lessor's actual cost, during the year, "of lighting and maintaining the parking and other common areas in the shopping center", *not to exceed a stated maximum.*

■ At the end of the first year of *operation* under the lease contract, Lessor furnished Lessee a breakdown and accounting of the maintenance charges incurred during the year, which charges included guard services rendered by the Burns Detective Agency. This was the item which Lessee refused to pay. It is the position of Lessee that the definition of what is to be maintained, the specific enumeration thereof, shows the class or nature of the things to be maintained, and guard service is not of that class or nature. It is the Lessor's position that paragraph 31 sets out a general duty to maintain, including the specified functions; that under the general duty to maintain, guard service should not be excluded just because it is not a named item or function. We could agree with the Lessor's position had the parties *simply said* "maintain" and no more. It could then be argued that maintaining included protection of the premises —preventive measures. But the specifying of the functions sets up a class of things, as to which guard service is foreign. The primary rule in the construction of con-

tracts is to ascertain the intent of the parties. The intent of the parties cannot be said to include guard service when the ordinary words of paragraph 31 are given their ordinary meaning.

■ If any further rule of construction is needed, then certainly the conclusion reached is sustained by the doctrine of ejusdem generis.

"* * * The rule of ejusdem generis 'is a rule of almost universal application.' Farmers' and Mechanics' National Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120, 1123, 1124. Under that rule, where specific and particular enumerations of things are followed by general words, the general words are not to be construed in their widest extent but are to be treated as limited and applied only to things of the same kind and class as those mentioned." (Citing numerous cases).

Rogers v. Hickie, Tex.Civ.App., 376 S.W. 2d 413 at page 418; affirmed Tex.Civ.App., 383 S.W.2d 383. The parties lend support to the application of that rule to the contract before us by the language of paragraph 31—"as described hereinabove".

■ Being of the opinion that the trial court erred in granting summary judgment for appellee, we reverse the judgment of the trial court; and being of the opinion that the motion for summary judgment of appellant, Western Auto Supply Company, should have been granted, we enter the judgment that the trial court should have entered by granting said motion for summary judgment. Judgment is here rendered that plaintiff, Charles Bassett Center, Inc., take nothing against defendant, Western Auto Supply Company; and it further appearing that defendant has heretofore paid to plaintiff the sum of said judgment, to-wit, $306.56, it is therefore ordered, adjudged and decreed that said defendant do have and recover judgment from and against the plaintiff in the amount of $306.56, together with all costs of court in this behalf incurred.